# Exhibit B

*Execution Version*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

| | |
|---|---|
| **In re** : | |
| : | **Chapter 11** |
| **WESTINGHOUSE ELECTRIC** : | |
| **COMPANY LLC**, *et al.*, : | **Case No. 17-10751 (MEW)** |
| : | |
| **Debtors.**[1] : | **(Jointly Administered)** |

---------------------------------------------------------------X

## AGREEMENT GOVERNING PRIVILEGE,
## WORK PRODUCT & COOPERATION OBLIGATIONS

This Agreement Governing Privilege, Work Product & Cooperation ("**Agreement**") is

made and entered into by and between **Westinghouse Electric Company LLC** ("**WEC**"), a

Delaware limited liability company with offices at 1000 Westinghouse Drive, Cranberry

Township, Pennsylvania 16066, USA, on behalf of itself and all of its direct and indirect

subsidiaries (collectively, "**Reorganized WEC**"), **Westinghouse Electric UK Holdings**

**Limited** ("**WEC EMEA**," and together with Reorganized WEC, the "**Reorganized**

**Company**"), a limited liability company organized under the laws of England, with offices at 3

Furzeground Way, Uxbridge, Middlesex UB11 1EZ, United Kingdom, and **W Wind Down Co**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Westinghouse Electric Company LLC (0933), CE Nuclear Power International, Inc. (8833), Fauske and Associates LLC (8538), Field Services, LLC (2550), Nuclear Technology Solutions LLC (1921), PaR Nuclear Holding Co., Inc. (7944), PaR Nuclear, Inc. (6586), PCI Energy Services LLC (9100), Shaw Global Services, LLC (0436), Shaw Nuclear Services, Inc. (6250), Stone & Webster Asia Inc. (1348), Stone & Webster Construction Inc. (1673), Stone & Webster International Inc. (1586), Stone & Webster Services LLC (5448), Toshiba Nuclear Energy Holdings (UK) Limited (N/A), TSB Nuclear Energy Services Inc. (2348), WEC Carolina Energy Solutions, Inc. (8735), WEC Carolina Energy Solutions, LLC (2002), WEC Engineering Services Inc. (6759), WEC Equipment & Machining Solutions, LLC (3135), WEC Specialty LLC (N/A), WEC Welding and Machining, LLC (8771), WECTEC Contractors Inc. (4168), WECTEC Global Project Services Inc. (8572), WECTEC LLC (6222), WECTEC Staffing Services LLC (4135), Westinghouse Energy Systems LLC (0328), Westinghouse Industry Products International Company LLC (3909), Westinghouse International Technology LLC (N/A), and Westinghouse Technology Licensing Company LLC (5961) (collectively, the "Debtors").

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

LLC ("**WDC**"), a Delaware limited liability company (together with the Reorganized Company, the "**Cooperation Group**," and individually, each a "**Cooperation Group Member**").

    1.    <u>The Existence of Common Interests.</u>

    (a)    On March 29, 2017, the Debtors commenced bankruptcy cases (collectively, the "**Bankruptcy Cases**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code. The Bankruptcy Cases were administratively consolidated before the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), under the caption *In re Westinghouse Electric Company LLC, et al.*, Case No. 17-10751.

    (b)    Pursuant to (i) the Modified Second Amended Joint Chapter 11 Plan of Reorganization [Docket No. 2986], dated March 28, 2018 (as amended, supplemented or otherwise modified from time to time, the "**Plan**"), (ii) the Plan Funding Agreement, dated as of January 12, 2018 (as amended, supplemented or otherwise modified from time to time, the "**PFA**"), by and among Toshiba Nuclear Energy Holdings (UK) Limited, TSB Nuclear Energy Services Inc., Brookfield WEC Holdings LLC, Brookfield WEC Holdings Inc. ("**Plan Investor**") and WDC, and (iii) the Court's Findings of Fact, Conclusions of Law, and Order Confirming Modified Second Amended Joint Plan of Reorganization, entered by the Court on March 28, 2018 [Docket No. 2988] (as amended, supplemented or otherwise modified from time to time, the "**Confirmation Order**"), on the Effective Date (as defined in the Plan), WDC received certain assets and became responsible for administering certain liabilities as part of the transactions contemplated by the Plan and the PFA.

    (c)    Pursuant to section 5.4 of the Plan, WDC:

> shall be responsible for administering the Debtors' obligations under the Plan, in each case solely to the extent required under the Plan. For the avoidance of doubt, Wind Down Co's obligations to any holder of a Claim against the Debtors or their Estates shall be no greater than the Debtors' liability to such holder under the

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER        

Plan. From and after the Effective Date, none of the Reorganized Debtors shall assume, or be liable or otherwise responsible for any actions against or liability, debt, guarantee, Claim, demand, expense, commitment or obligation (whether direct or indirect, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due) of any kind or description, including all costs and expenses related thereto of the Debtors that are not Assumed Liabilities, including, for the avoidance of doubt, any rejection damages arising from the rejection of any Executory Contract or Unexpired Lease, and no Reorganized Debtor shall be liable for, or be deemed to assume, any Claim against, or liability of, the Debtors, except for the Assumed Liabilities.

Section 5.4 further outlines WDC's authority to perform its obligations, including, as examples, the authority to (i) maintain the books and records and accounts of WDC; (ii) perform duties and functions of WDC that are consistent with the implementation of the Plan; (iii) as directed by the Plan Oversight Board, control and effectuate the Reconciliation Plan (as defined therein), including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors (other than Assumed Liabilities); and (iv) as directed by the Plan Oversight Board, prosecute or elect not to prosecute all causes of action on behalf of WDC for the benefit of holders of allowed Claims.

(d)    Pursuant to Section 7.01 of the PFA, Plan Investor shall, and shall cause TSB Nuclear Energy Services Inc. and each of the Reorganized Debtors and, to the extent within the Plan Investor's control, the Non-Controlled JVs (as defined in the PFA) to, among other things:

(A) afford Wind Down Co and its Representatives and their respective Affiliates reasonable access, during normal business hours, to the properties, books and records of Plan Investor and the Company Group Members (and the extent within the Plan Investor's control, the Non-Controlled JV) in respect of any of the Reorganized Company Group Members, the Non-Controlled JVs and the Business, the Business Assets and the Assumed Liabilities; (B) furnish to Wind Down Co and its Representatives and their respective Affiliates such additional financial and other information regarding the Acquired Companies, their respective Affiliates, the Business, the Business Assets and the Assumed Liabilities as Wind Down Co or its Representatives may from time to time reasonably request and (C) make available to Wind Down Co and its Representatives and their respective Affiliates those employees of Plan Investor

3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

or the Company Group Members and to the extent possible, the Non-Controlled JVs, whose assistance, expertise, testimony, notes or recollections or presence may be reasonably necessary to assist Wind Down Co, its Representatives or their respective Affiliates in connection with its inquiries for any purpose referred to above, including the presence of such Persons for interviews and depositions and as witnesses in hearings or trials for such purposes, provided, however, that the foregoing shall not unreasonably interfere with the business or operations of Plan Investor or any of its Affiliates.

(e)    Section 5.5 of the Plan provides:

Subject to Section 7.01 of the Plan Funding Agreement, from and after the Effective Date, in connection with any reasonable business purpose, or as is necessary to administer, or satisfy Wind Down Co's obligations in connection with administering the Chapter 11 Cases, the Reorganized Debtors will, (a) afford Wind Down Co and the Plan Oversight Board access to the Reorganized Debtors' properties, books and records, (b) furnish to Wind Down Co and the Plan Oversight Board financial and other information, and (c) make available to Wind Down Co and the Plan Oversight Board those employees of the Reorganized Debtors whose assistance, expertise, testimony, notes or recollections or presence may be reasonably necessary to assist Wind Down Co and the Plan Oversight Board.

(f)    Section 7.06 of the PFA provides:

From and after the Closing, irrespective of such claim being an Excluded Asset hereunder, Wind Down Co will use commercially reasonable efforts to pursue the claims that any Company Group Member may have against Chicago Bridge & Iron Company N.V. ("CB&I") and its Affiliates, including the dispute regarding working capital and related purchase price adjustments, arising under that certain Purchase Agreement (the "CB&I Purchase Agreement"), dated October 27, 2015, by and among Westinghouse Electric Company LLC, CB&I, CB&I Stone & Webster, Inc. and WSW Acquisition Co., LLC (the "CB&I Claims"), which commercially reasonable efforts may include offsetting or netting claims asserted by CB&I or its Affiliates that arise under the CB&I Purchase Agreement, including Proofs of Claim 3413 and 3414 (amending proof of claim numbers 3086 and 3087) filed in the Bankruptcy Cases (the "CB&I Bankruptcy Claims"). Promptly, and in any case within five (5) Business Days after any amount is paid in cash to or for the benefit of Wind Down Co with respect to, arising out of, or relating to the CB&I Claims, Wind Down Co will pay by wire of immediately available funds to Plan Investor an amount equal to 60% of the aggregate amount of such cash payment net of any amount that Wind Down Co pays to CB&I or its Affiliates on account of the CB&I Bankruptcy Claims.

(g)    Accordingly, the Cooperation Group Members desire to work together, as

necessary and appropriate, to (i) satisfy the Reorganized Debtors' and WDC's common and

4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    WD-0000383

interdependent legal rights and obligations under the Plan and PFA, in connection with administering the Bankruptcy Cases; and accordingly, (ii) participate in investigations, inquiries, litigation, or other proceedings related to Claims (as defined in the Plan) asserted in the Bankruptcy Cases and the CB&I Claims (as defined in the PFA) (collectively, the "**Claims**"). The Cooperation Group seeks to foster cooperation, which will further each Cooperation Group Member's respective legal interests, and to avoid any waiver of privilege and work-product in connection with fulfilling their responsibilities (including without limitation, reconciliation of Claims under the Plan).

(h)     Based on the circumstances described in sections 1(a) through (g) above, the Cooperation Group Members have certain common and interrelated legal rights and obligations and common legal interests in connection with the Bankruptcy Cases and the Claims. In furtherance of those common and interrelated legal rights and obligations and common legal interests, the Cooperation Group Members need and wish to ensure that each Cooperation Group Member is free to share and exchange certain information that may be necessary and appropriate without waiving the protections of any applicable privilege, doctrine, immunity, or protection from discovery or disclosure (collectively, any "**Privilege**").

(i)     No provision in this Agreement shall, nor shall be deemed to, limit, waive, or supersede any obligation of any Cooperation Group Member under the Plan or PFA. If there is any conflict, apparent conflict or ambiguity in or between any of the sections of this Agreement or any other document or agreement, the following order of precedence shall prevail (with (i) being the highest): (i) the Confirmation Order; (ii) the Plan, (iii) the PFA; and (iv) this Agreement.

5

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

2.    Sharing Cooperation Materials.

(a)    Because of the common legal interests, rights and obligations that each Cooperation Group Member has under the Plan, each Cooperation Group Member believes that it is in its legal interest, in connection with the Bankruptcy Cases and/or the Claims, to cooperate, make available and disclose to the other Cooperation Group Members and/or to certain Receiving Professionals (as defined below) certain information and documents related to the Bankruptcy Cases and/or the Claims, as each Providing Party (as defined below) in its sole discretion deems appropriate, including legal research and analyses, strategies, theories, documents, recordings, transcriptions of recordings, factual material, mental impressions, prior and future advice of and communications among counsel, memoranda, interviews and reports, and the information contained in each of the foregoing, as well as oral communications, including client communications, client confidences, and other documents subject to Privilege, respecting the Bankruptcy Cases and/or the Claims (collectively, "**Cooperation Materials**"). Cooperation Materials may also include certain information or materials developed jointly by the Cooperation Group relating to the Bankruptcy Cases and/or the Claims.

(b)    Cooperation Materials may also comprise those materials provided, disclosed, or developed by or to a Cooperation Group Member or a Receiving Professional prior to the execution of this Agreement for the purpose of reconciling Claims.

(c)    Cooperation Materials also comprise those materials designated in writing as such by any Providing Party consistent with section 13 below.

(d)    Any Cooperation Materials that are exchanged or created pursuant to this Agreement, whether before or after the date hereof, further are not only subject to a "common legal interest," but are developed and provided, as well, pursuant to the work product doctrine, in

6

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    WD-0000385

order to satisfy the purpose and requirements in that regard of the Plan, as quoted above, in connection with the Bankruptcy Cases and/or the Claims. Any disclosure or exchange of Cooperation Materials pursuant to this Agreement will not waive any Privilege, including work-product protection. Each Cooperation Group Member reserves all other rights to seek to obtain any Cooperation Materials, including, without limitation, by contending, other than on the basis of its disclosure under this Agreement, that any Privileges do not apply to such Cooperation Materials.

3.    Purpose of Disclosure of Cooperation Materials

(a)    The Receiving Party (as defined below) is receiving, and shall use, the Cooperation Materials solely for the purpose of evaluating legal and factual issues, and complying with its obligations, particularly as to reconciliation of Claims, concerning (i) WDC's obligations in connection with administering the Bankruptcy Cases, and (ii) the resolution of Claims, including the CB&I Claims (the "**Purpose**"). The Receiving Party shall not use the Cooperation Materials for any purpose other than in furtherance of the activities described in this Section 3.

(b)    The Cooperation Group acknowledges and agrees that the purpose of this Agreement is to protect the confidential and/or privileged nature of the Cooperation Materials, so as to be able to use such materials for the Purpose. Subject to applicable law and the Receiving Party's compliance with applicable law, the Cooperation Group Members agree and acknowledge that the execution of this Agreement by the Receiving Party, and the limitations of the Receiving Party and Receiving Professionals hereunder, shall not in and of themselves prevent, restrict or limit the Receiving Party's or Receiving Professionals' ability to (i) acquire, hold, transfer or dispose, or otherwise trade in, securities, financial instruments, or Claims

7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    WD-0000386

against the Debtors' Estates (as defined in the Plan) or WDC (together with any rights attendant
thereto), or (ii) take any action to assert, pursue or prosecute any such Claims and rights and/or
to defend against any objection, dispute or litigation that may be filed or commenced in respect
thereof, in either case, including with involvement of Receiving Professionals who receive
Cooperation Materials hereunder so long as the Receiving Parties or Receiving Professionals do
not use or disclose the Cooperation Materials and do not otherwise breach the confidentiality
terms of this Agreement in connection with any of the activities set forth in (i) and (ii). The
Providing Party understands that the Receiving Parties will retain certain mental impressions of
the Cooperation Materials and agree that the retention and/or unintentional use of such mental
impressions will not in and of itself constitute use of Cooperation Materials in breach of this
Agreement.

4.    No Disclosure to Third Parties.    Cooperation Materials shall not be disclosed to
any person or entity other than Cooperation Group Members, their Representatives (as defined
below), or Receiving Professionals (in accordance with section 8 below), except as otherwise
provided in this Agreement: (a) without the express written consent of the Cooperation Group
Member which originally provided the information (the "**Providing Party**"); or (b) in the event
of a subpoena or other process, including document requests served in litigation, or as otherwise
required by applicable law or regulation, in accordance with the procedures outlined in section
11 below. This limitation shall survive the withdrawal of a Cooperation Group Member from
this Agreement, the termination of this Agreement, and/or the termination of the Bankruptcy
Cases or any potential litigation concerning the Claims or otherwise. For purposes of this
Agreement, "**Representatives**" shall refer to a Cooperation Group Member and/or its affiliates
and its and their respective officers, directors, mangers, members, partners, or employees who

8

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    WD-0000387

are actually engaged in and need to know or review the Cooperation Materials for the Purpose,
who have been informed of the confidential nature of the Cooperation Materials, and who have
been advised by and agree that such information is to be kept confidential and shall not
be used by them for any purpose other than the Purpose. The Plan Oversight Board and the
Members serving thereon shall be Representatives of WDC for all purposes of this Agreement.

5.      Limited Use of Cooperation Materials.  Cooperation Materials may be used by a
Cooperation Group Member, its Representatives or Receiving Professionals receiving the
Cooperation Materials (each, a "**Receiving Party**") only in accordance with this Agreement and
solely for the Purpose defined in Section 3. No Receiving Party shall use Cooperation Materials
obtained pursuant to this Agreement as evidence in any judicial, administrative or other
proceeding, except to the extent such Cooperation Materials are used by WDC and the Plan
Oversight Board in connection with thier implementation of the Reconciliation Plan (as defined
in the Plan) and in satisfaction of thier obligations under the Plan. Each Cooperation Group
Member agrees that the disclosure of Cooperation Materials to a Receiving Party shall not waive
any applicable Privilege, including as between them in any matters in which they are or may
become adverse. No Cooperation Group Member shall argue or otherwise assert that the
disclosure or exchange of Cooperation Materials, or of any other documents, information, or
analyses pursuant to this Agreement, constitutes a waiver of any Privilege of such Cooperation
Materials, or of such other documents, information, or analyses.

6.      Confidentiality.   All   Receiving Parties will ensure the non-disclosure of
Cooperation Materials, except in accordance with this Agreement.

7.      No Copies Without Prior Approval.  Except to the extent necessary in connection
with the Purpose, no Cooperation Materials shall be copied, reproduced or excerpted in any way

9

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

or form (collectively referred to as "**Reproductions**") by the Receiving Party or any Receiving

Professional. All Reproductions shall include the Providing Party's proprietary notice and/or

designation or, when applicable, a third party's proprietary notice that was included with the

original Cooperation Materials. Regardless of the form of the Cooperation Materials as

submitted, or of any markings appurtenant to the Cooperation Materials themselves, the

Providing Party agrees that the Receiving Party may store Cooperation Materials in hard copy or

electronic form in an eletronic data management system in a manner that does not compromise

the confidential nature of the Cooperation Materials.

     8.    Permitted Disclosure.

     (a)    Cooperation Materials may be disclosed by a Receiving Party or a

Providing Party, at its sole discretion, to one or more of any of (i) its outside legal counsel

(including such counsel's support staff), (ii) its consultants (including such consultants' support

staff), experts (both testifying and non-testifying experts, including such experts' support staff),

financial advisors (including such financial advisor's support staff) or other similarly retained

professionals (including those professionals' support staff), engaged by a Cooperation Group

Member in connection with the Bankruptcy Cases and/or reconciliation of the Claims (each type

of professional listed in this subsection and subsection (i), a "**Receiving Professional**"), and/or

(iii) the Cooperation Group or another Cooperation Group Member. Before a Providing Party

discloses any Cooperation Materials to any person or entity included in subsection (ii) above,

such person or entity shall acknowledge and confirm in writing to be bound by the terms of this

Agreement by executing the form of Agreement to be Bound by Agreement Governing Privilege,

Work Product & Cooperation Obligations, attached hereto as Exhibit A. To the extent

Cooperation Materials are designated by a Providing Party as "PRIVILEGED AND

10

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER          WD-0000389

CONFIDENTIAL—COOPERATION MATERIALS—PROFESSIONALS' EYES ONLY" in accordance with section 13 below, such materials may not be disclosed to any Cooperation Group Member, and may be disclosed only to the Receiving Professionals engaged by the Cooperation Group Member to which the Providing Party seeks to provide access to and the benefit of the Cooperation Group Materials. To the extent Cooperation Materials are designated by a Providing Party as "PRIVILEGED AND CONFIDENTIAL—COOPERATION MATERIALS—[RECEIVING PROFESSIONAL NAME]'S EYES ONLY" in accordance with section 13 below, such materials may be disclosed only to the Receiving Professional identified in such designation.

(b)    Without limiting or waiving any obligations of any person or entity under the Plan or PFA, this Agreement shall not obligate any Cooperation Group Member to produce to any person or entity any documents, information, or analyses. Each Cooperation Group Member reserves its exclusive right to maintain or waive, in its sole discretion, any applicable Privilege as to such documents, information, or analyses provided by such Cooperation Group Member.

9.    <u>Materials Discovered Through Independent Efforts.</u> It is expressly understood that nothing contained in this Agreement shall limit the right of any Receiving Party to use or disclose to third parties, in any fashion it sees fit, any of its own documents, information, or analyses, even if such documents, information, or analyses are contained in Cooperation Materials disclosed by a Providing Party under this Agreement, provided that such documents, information, or analyses were created or obtained independently by that Receiving Party.

10.    <u>Exceptions.</u> Cooperation Materials shall not include information or materials that:

(a)    at the time of disclosure to the Receiving Party or Receiving Professionals

11

hereunder are generally known or readily available to the public or become so known or readily available other than as a result of any violation of this Agreement by the Receiving Party or any Receiving Professional, or as a result of any other party known, after reasonable inquiry, to the Receiving Party or its Representatives to have entered into a confidentiality agreement with the Reorganized Debtors or to be subject to a duty of confidence with the Reorganized Debtors violating such confidentiality agreement or duty;

        (b)      become available on a non-confidential basis from a person who is not actually known to the Receiving Party or any Receiving Professional, after reasonable inquiry, to be bound by a confidentiality agreement with the Reorganized Debtors with respect to such information or otherwise prohibited from transmitting such information to the Receiving Party or any Receiving Professional;

        (c)      was lawfully known by or lawfully in the possession of the Receiving Party or Receiving Professionals without any confidentiality restriction prior to being disclosed by or on behalf of the Providing Party pursuant to this Agreement;

        (d)      is independently developed by the Receiving Party or any Receiving Professional without use of or reference to the Cooperation Materials;

        (e)      was or becomes lawfully known by or is in the possession of the Receiving Party or Receiving Professionals pursuant to a confidentiality agreement (or otherwise on a confidential basis) from a party, other than the Providing Party or their respective Representatives, who is not known to be in violation of any confidentiality obligations by disclosing such information to the Receiving Party or its Representatives.

        11.      <u>Demands to Produce Cooperation Materials.</u>

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER        WD-0000391

(a)    If any person or entity requests or demands, by subpoena, other process, or otherwise, any Cooperation Materials from a Receiving Party, the Receiving Party receiving such request or demand shall (i) except as otherwise required by law, immediately notify in writing, as promptly as reasonably practicable under the circumstances, the Providing Party of the request or demand, in order to permit the Providing Party to assert and protect any applicable rights and Privileges with respect to such materials, and (ii) decline to produce the requested Cooperation Materials unless the Privilege is waived in writing by the Providing Party or an order that has not been reversed, vacated or stayed directs production of the Cooperation Materials. No Receiving Party shall voluntarily surrender Cooperation Materials without taking reasonable steps to provide the Providing Party a reasonable opportunity to protect its interest in preserving any Privilege applicable to such material.  The Providing Party may take such steps as it deems necessary and appropriate, including intervention with notice to all litigating parties in the court, tribunal or body having jurisdiction over such subpoena, request, or demand, to permit the assertion of its applicable rights and Privileges with respect to such Cooperation Materials. Each Receiving Party shall reasonably cooperate with all other Cooperation Group Members and Receiving Professionals in any proceeding relating to the disclosure of Cooperation Materials.

(b)    If, in the absence of a protective order or other remedy or the receipt of a waiver from the Providing Party, the Receiving Party or any Receiving Professional concludes, based on the advice of counsel to the Receiving Party or such representative thereof, as applicable, that it is required to disclose such Cooperation Material, the Receiving Party or Receiving Professional may, without liability hereunder, disclose only so much of, or that portion of, the Cooperation Material which such counsel advises the Receiving Party or Receiving Professional it is legally required to disclose, provided that the Receiving Party or

13

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                                    WD-0000392

Receiving Professional exercises commercially reasonable efforts to preserve the proprietary, confidential and/or privileged nature of the Cooperation Material, including, to the extent permitted by law, without limitation, by cooperating with the Providing Party to obtain an appropriate protective order or other reliable assurance that proprietary and confidential treatment will be accorded the Cooperation Material.

12.    Waiver of Privilege and Use to be Made by a Party of its Own Cooperation Materials.  No Cooperation Group Member or Receiving Professional may at any time waive any Privilege of any other Cooperation Group Member regarding Cooperation Materials without the prior written consent of such Cooperation Group Member.  Nothing in this Agreement is intended or shall be construed to limit the right of a Cooperation Group Member to disclose or otherwise deal with that Cooperation Group Member's own documents or information in any manner that it, in its sole discretion, deems appropriate.

13.    Designation of Cooperation Materials.  Prior to the exchange of Cooperation Materials, the Providing Party should mark the materials in a prominent manner, or otherwise so designate the materials, with the designations, as and if applicable: "PRIVILEGED AND CONFIDENTIAL—COOPERATION MATERIALS."  Cooperation Materials designated by a Providing Party, in its sole discretion, as "PRIVILEGED AND CONFIDENTIAL— COOPERATION MATERIALS—PROFESSIONALS' EYES ONLY" or "PRIVILEGED AND CONFIDENTIAL—COOPERATION    MATERIALS—[RECEIVING    PROFESSIONAL NAME]'S EYES ONLY" are subject to additional protections, as described in section 8(a) above.  Failure to designate Cooperation Materials in either manner shall not constitute a waiver by the Providing Party or any Cooperation Group Member of any applicable Privilege, or of any right to modify or assert such designation at any time.

14

    WD-0000393

14.    Settlement. WDC agrees not to enter into any settlement or other agreement with a third party that would require or result in disclosure of Cooperation Materials covered by this Agreement without the prior written consent of the Providing Party unless ordered to do so by a court and after WDC has complied with the procedures set forth in section 11 herein.

15.    Diverging or Adverse Interest. If any Cooperation Group Member believes it ceases to have a legal obligation or common legal interest sufficient to support a common interest or other applicable privilege or doctrine providing immunity or an exemption from disclosure (including but not limited to the work product doctrine), that Cooperation Group Member agrees to promptly notify all other Cooperation Group Members in writing of that position, but that Cooperation Group Member and each Receiving Professional which it has engaged shall continue to protect all Cooperation Materials it has received under this Agreement. Immediately upon demand by any Providing Party, and subject to any rights or obligations under the Plan or PFA, any Cooperation Group Member that believes it no longer has an obligation or a common legal interest sufficient to support a common interest privilege, or Receiving Professional engaged by that Cooperation Group Member, shall at the Providing Party's election, return or destroy (and certify the same) all reasonably accessible Cooperation Materials, including copies thereof, but such obligation shall be excused during the pendency of any request by a third party seeking production of Cooperation Materials by means other than pursuant to this Agreement. However, nothing herein shall require any Cooperation Group Member or Receiving Professional (whether then still a party to this Agreement or withdrawn from the Agreement) to return or destroy any Cooperation Materials that are work product, including a Cooperation Group Member's own work product and Cooperation Materials prepared by Receiving Professionals, or work product prepared by a Cooperation Group Member or

15

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                                    WD-0000394

Receiving Professional for use by other Cooperation Group Members and/or Receiving Professionals. Nothing in this Agreement shall be construed as imposing any obligation to preserve or retain Cooperation Materials beyond any otherwise existing legal obligations or as in any way limiting or eliminating any such obligations. Any work product prepared by Cooperation Group Members or Receiving Professionals or work product prepared by a Cooperation Group Member or Receiving Professional for use by other Cooperation Group Members or by Receiving Professionals retained by any Cooperation Group Member, pursuant to this Section 15 shall thereafter, whether or not this Agreement is terminated, remain subject to the confidentiality terms of this Agreement. Notwithstanding the return or destruction of Cooperation Materials, the Receiving Party and Receiving Professionals will continue to be bound by their obligations to keep all such Cooperation Materials confidential in accordance with this Agreement.

16.    No Transfer of Title, Right or Interest. The Providing Party retains all right, title, and interest in and to the Cooperation Materials shared with the Receiving Party. Without limiting the foregoing, nothing in this Agreement or in any disclosures made hereunder shall be construed as granting to the Receiving Party or any Receiving Professionals any patent, copyright or design license or rights of use under similar industrial property rights which may now or hereafter exist in the Cooperation Materials.

17.    Withdrawal. Without limiting or waiving any obligations of any person or entity under the Plan or PFA, any Cooperation Group Member may withdraw from this Agreement at any time by giving written notice to all other Cooperation Group Members, in which case this Agreement, going forward, shall no longer be operative as to the withdrawing Cooperation Group Member; except, however, that the withdrawn Cooperation Group Member and any

16

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    WD-0000395

Receiving Professionals engaged by the withdrawn Cooperation Group Member shall continue to protect and maintain the confidentiality of all Cooperation Materials they have received under this Agreement, and such withdrawal shall in no way otherwise affect the continued obligations of such withdrawn Cooperation Group Member or any Receiving Professional engaged by such withdrawn Cooperation Group Member with respect to any Cooperation Materials previously disclosed under this Agreement. Immediately upon demand by any Providing Party, the withdrawn Cooperation Group Member and each Receiving Professional engaged by the withdrawing Cooperation Group Member shall return or destroy (and certify the same) all reasonably accessible Cooperation Materials, including copies of them, except as otherwise provided for in this Agreement.

18.    Compliance with Export Control Laws.  WDC agrees not to, and to cause its Receiving Professionals not to, disclose, directly or indirectly, transfer, export, or re-export any Cooperation Materials, or any direct products or technology resulting therefrom to any country, natural person or entity, except in accordance with applicable export control laws, including, without limitation, the United States and the European Union (including the European Community, EC 428/2009), and other applicable government export control laws and regulations (collectively, the "**Applicable Export Laws**"). To assure compliance with the Applicable Export Laws of the United States Government, specifically the U.S. Department of Energy export regulations of nuclear technology under 10 C.F.R. Part 810 (U.S. Code of Federal Regulations), the U.S. Department of Commerce export regulations of commercial or dual use-technology under 15 C.F.R. 730 et seq., and the U.S. Department of Treasury's sanctions programs and sanctions lists, neither WDC nor any of its Receiving Professionals shall disclose or permit the disclosure, transfer, export, or re-export, directly or indirectly, of any Cooperation Materials, or

17

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    WD-0000396

any product or technology derived from such Cooperation Materials, without the prior written permission of Reorganized WEC, which permission may be made contingent on additional United States Government and/or other government approvals. WDC (i) represents and warrants that none of WDC, its personnel (including its employees, contractors, consultants, officers, directors and principal owners) or, to WDC's knowledge, its Receiving Professionals are currently included in any published lists maintained by the governments of the United States, the European Union or other countries of persons and entities whose export or import privileges have been denied or restricted and (ii) covenants and agrees that (A) WDC shall not, and shall cause its personnel (including its employees, contractors, consultants, officers, directors and principal owners) not to, and shall direct any of its Receiving Professionals not to, use the Cooperation Materials in any activity prohibited by 15 CFR Part 744, including, without limitation, nuclear, chemical, or biological weapons proliferation activities, and (B) WDC shall not, shall cause its personnel (including its employees, contractors, consultants, officers, directors and principal owners) not to, and shall direct its Receiving Professionals not to, disclose Cooperation Materials to any countries for which the United States, the European Union or other applicable governments and international organizations maintain an embargo or to citizens or residents thereof if prohibited by such embargo. WDC shall, and shall cause its personnel (including its employees, contractors, consultants, officers, directors and principal owners), and shall direct any of its Receiving Professionals to fully comply with all such Applicable Export Laws with regard to the Cooperation Materials and shall cooperate in good faith with the reasonable requests of the Reorganized Debtors made for purposes of its compliance with such laws and regulations. Notwithstanding any other provisions in this Agreement and/or the

18

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    WD-0000397

termination or expiration hereof, the obligations set forth in this Section 18 shall be binding on the Cooperation Group so long as the relevant Applicable Export Laws are in effect.

19.    Termination.    This Agreement may be terminated at any time by agreement of all Cooperation Group Members, but each Receiving Party nevertheless shall continue to protect all Cooperation Materials it has received under this Agreement in accorance with the terms hereof, and such termination shall in no way otherwise affect the continued obligations of the Cooperation Group or Receiving Professionals with respect to any Cooperation Materials previously disclosed under this Agreement.

20.    Recognition of Possible Conflicts.    Each Cooperation Group Member and Receiving Professional acknowledges that any Cooperation Group Member or Receving Professional, or its employees, may become a witness, whether voluntarily or otherwise, in connection with the Bankruptcy Cases or other matters. In the event that any Cooperation Group Member or Receiving Professional, or any of its or their employees, becomes a witness or otherwise may possess interests adverse to one or more of the Cooperation Group Members, nothing in this Agreement shall create a conflict of interest, based upon the existence of this Agreement or any sharing of Cooperation Materials, so as to require the disqualification of any Receiving Professional from the continued representation of the Cooperation Group Member by which such Receiving Professional has been engaged. Each Cooperation Group Member agrees that, in the event that any Cooperation Group Member or Receiving Professional, or its employees, should at some point become an adverse witness or otherwise become adverse to a Cooperation Group Member, whether at a trial or at another proceeding in which any information contained in any Cooperation Materials may be at issue, counsel for such Cooperation Group Member may not use that information to cross-examine another Cooperation

19

    WD-0000398

Group Member or Receiving Professional, or its employees, for any purpose that may be detrimental to the interests of the Cooperation Group Member by which such Receiving Professional is or was retained, unless such information is not protected by any Privilege or was subsequently obtained independently, including through other discovery or proper means.  By entering into this Agreement, each Cooperation Group Member knowingly waives any objection premised on a conflict of interest that might otherwise be available based upon the sharing of documents, information, or analyses pursuant to this Agreement.  In waiving such objections, but without affecting any Party's rights or obligations under the Plan or PFA, each Cooperation Group Member specifically is aware that this Agreement does not require it to share any particular piece of information, and that it will be the option of the Cooperation Group Member, in its sole discretion, to contribute or withhold any particular information from the other Cooperation Group Members pursuant to this Agreement.

21.    Separate and Independent Representation.    This Agreement, and any communications made pursuant to it, shall not: (a) create or be deemed to create any attorney-client relationship between any counsel and any other Cooperation Group Member for whom that counsel is not counsel of record or otherwise specifically engaged; (b) affect the separate and independent representation of each Cooperation Group Member by its respective counsel according to what such counsel believes to be in his or her client's best interest; (c) constitute an endorsement of, or an authorization to control, the strategy or decisions of any other Cooperation Group Member; (d) create an agency relationship, partnership, or joint venture; (e) create a conflict of interest so as to require the disqualification of any counsel from the representation of their respective clients in any potential litigation or otherwise to prevent any such counsel from representing any other client in any other matter adverse to any Cooperation

20

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    WD-0000399

Group Member hereto solely as a result of such counsel's participation in this Agreement; or (f) preclude counsel for any Cooperation Group Member or other Receiving Professional from taking discovery of, or examining or cross-examining, another Cooperation Group Member or Receiving Professional or their respective employees or representatives, subject to any applicable restriction in case of any adverse interest as set forth in section 20 above. Each Cooperation Group Member expressly waives any right it may have in the Bankruptcy Cases, or any other proceeding, matter, or action of any sort, to assert that this Agreement or any Cooperation Group Member's participation in this Agreement creates: an attorney-client relationship; an agency relationship, partnership, or joint venture; a conflict of interest; or any basis for precluding the right to take discovery from another Cooperation Group Member. Each Cooperation Group Member hereby represents and agrees that it will not seek to disqualify counsel (or any expert or other professional or advisor retained by such counsel or such counsel's client) for any other Cooperation Group Member from continuing to represent such other Cooperation Group Member in any subsequent proceedings, whether or not that other Cooperation Group Member's interests become adverse to it, on the basis of access to information obtained hereunder.

22.    <u>Receiving Party's Liability for Acts of Receiving Professionals.</u>  The Parties shall cause any and all of their Receiving Professionals (other than outside legal counsel) to acknowledge and confirm in writing to be bound by the terms of this Agreement by executing the form of Agreement to be Bound by Agreement Governing Privilege, Work Product & Cooperation Obligations, attached hereto as Exhibit A. The Parties shall be liable and legally responsible to the extent provided by law for any acts of non-compliance with this Agreement done by any Receiving Professional.

21

23. Injunctive Relief. Disclosure of any Cooperation Materials in violation of this Agreement will cause irreparable harm to the Providing Party for which there is no adequate legal remedy. Each Cooperation Group Member and Receiving Professional acknowledges that immediate injunctive relief is an appropriate and necessary remedy for violation of this Agreement and agrees not to argue or assert in any proceeding relating to this Agreement that monetary damages is an adequate remedy.

24. Severability. In the event that any provision or term of this Agreement is held to be void, voidable, or unenforceable, the remaining portions of this Agreement shall remain in full force and effect.

25. No Waiver. Any waiver in any particular instance of the rights and limitations contained in this Agreement shall not be deemed, and is not intended to be, a general waiver of those or any other rights or limitations contained in this Agreement and shall not operate as a waiver beyond the particular instance. For the avoidance of doubt, the conflict waivers discussed in sections 15 and 20 are limited in scope to conflict waivers based solely on a party's participation in this Agreement.

26. Modifications; Other Agreements. This Agreement may be modified only in writing signed by all Cooperation Group Members. The obligations and restrictions set forth herein, including those regarding the use of materials and confidentiality obligations, are in addition to and supplement any obligations and restrictions set forth in the PFA and any other agreement between or binding on the Cooperation Group Members.

27. Authority. Counsel signing this Agreement on behalf of a Cooperation Group Member represents that it has full power and authority to execute this Agreement on behalf of such Cooperation Group Member, that it has fully informed such Cooperation Group Member of

22

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

WD-0000401

the terms of this Agreement, and that such Cooperation Group Member has agreed to be bound by all the terms of this Agreement.

28.    <u>Notices.</u> Notices authorized or required by this Agreement shall be delivered by hand or reputable third-party overnight courier service or electronic mail.  Notices to the Reorganized Debtors shall be delivered to: 1000 Westinghouse Drive, Cranberry Township, Pennsylvania 16066, Attention: Michael Sweeney; sweenemt@westinghouse.com; with a copy to both (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, Attention:  John Longmire; jlongmire@willkie.com and Kfir Abutbul; <u>kabutbul@willkie.com</u> and (b) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attention:    Howard    Chatzinoff;    Howard.Chatzinoff@weil.com;    Garrett    A.    Fail; Garrett.Fail@weil.com;    Edward    Soto;    Edward Soto@weil.com;    David    Griffiths; David.Griffiths@weil.com.  Notices to WDC shall be delivered to The Baupost Group, L.L.C., 10 St. James Avenue, Suite 1700, Boston, Massachusetts 02116, Attention: General Counsel; Legal@baupost.com; with a copy to Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attention: Alan W. Kornberg; akornberg@paulweiss.com; Kyle Kimpler; kkimpler@paulweiss.com. Any such notice, if delivered by hand or electronic mail, shall be deemed to have been given on the day of actual delivery thereof and, if delivered by courier, shall be deemed to have been given one (1) day following the date it was provided to the reputable third-party overnight courier service.

29.    <u>Governing Law and Submission to Jurisdiction.</u>    This Agreement shall be governed by and construed according to the laws of the State of Delaware, without giving effect to its conflict of laws principles, including, without limitation, Delaware Rule of Evidence 502, which shall govern both the availability of privilege and the disclosure and sharing of privileged

23

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    WD-0000402

information, including but not limited to Cooperation Materials, and the determination of Privilege, under this Agreement. Each Cooperation Group Member and Receiving Professional agrees to submit itself to the jurisdiction of the Court presiding over the Bankruptcy Cases with respect to any disputes arising hereunder.

30.    Effective Date.    This Agreement may be executed in counterparts, each of which shall constitute an integrated and enforceable whole upon execution by all Cooperation Group Members, and shall be retroactively effective to August 1, 2018 (the effective date of the Plan). This Agreement shall also extend retroactively to all Cooperation Materials exchanged before the effective date of this Agreement that were exchanged pursuant to any legal obligation or common interest privilege.

24

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

WD-0000403

WESTINGHOUSE ELECTRIC COMPANY LLC
On behalf of the Reorganized Debtors

By: _____          Date: October 5, 2018
    Michael T. Sweeney
    Westinghouse Electric Company LLC
    1000 Westinghouse Drive
    Cranberry, PA 16066
    Telephone: (412) 374-4111


WESTINGHOUSE ELECTRIC UK HOLDINGS LIMITED

By: _____          Date: October 5, 2018
    Michael T. Sweeney
    Westinghouse Electric Company LLC
    1000 Westinghouse Drive
    Cranberry, PA 16066
    Telephone: (412) 374-4111


W WIND DOWN CO LLC

By: Nucleus Acquisition LLC
Its: Sole Member

By: BRP Partners II, Inc.
Its: Manager

By: _____          Date: _____
    Joshua A. Greenhill, Vice President
    W Wind Down Co LLC
    c/o Nucleus Acquisition LLC
    c/o BRP Partners II, Inc.
    c/o The Baupost Group, L.L.C.
    10 St. James Avenue, Suite 1700
    Boston, MA 02116
    Telephone: (617) 210-8300


25

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                          WD-0000404

**WESTINGHOUSE ELECTRIC COMPANY LLC**
On behalf of the Reorganized Debtors

By: _____                                    Date: _____

    Michael T. Sweeney
    Westinghouse Electric Company LLC
    1000 Westinghouse Drive
    Cranberry, PA 16066
    Telephone: (412) 374-4111


**WESTINGHOUSE ELECTRIC UK HOLDINGS LIMITED**

By: _____                                    Date: _____

    Michael T. Sweeney
    Westinghouse Electric Company LLC
    1000 Westinghouse Drive
    Cranberry, PA 16066
    Telephone: (412) 374-4111


**W WIND DOWN CO LLC**

By: Nucleus Acquisition LLC
Its: Sole Member

By: BRP Partners II, Inc.
Its: Manager

By: _____                                    Date: ___October 5, 2018_____

    Joshua A. Greenhill, Vice President
    W Wind Down Co LLC
    c/o Nucleus Acquisition LLC
    c/o BRP Partners II, Inc.
    c/o The Baupost Group, L.L.C.
    10 St. James Avenue, Suite 1700
    Boston, MA 02116
    Telephone: (617) 210-8300

25

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                                        WD-0000405

## EXHIBIT A
## AGREEMENT TO BE BOUND BY
## AGREEMENT GOVERNING PRIVILEGE,
## WORK PRODUCT & COOPERATION OBLIGATIONS

1.    I _____ have read the Agreement Governing Privilege, Work Product & Cooperation Obligations for the protection and exchange of Cooperation Materials dated October [ ], 2018 (the "**Agreement**"), and I agree to be bound by its terms with respect to any Cooperation Materials that are furnished to me as set forth in the Agreement.

2.    I further agree (a) not to disclose to anyone any Cooperation Materials other than as set forth in the Agreement; and (b) not to make any copies of any Cooperation Materials furnished to me except in accordance with the Agreement.

3.    I hereby agree that any Cooperation Materials furnished to me will be used by me only for the Purpose set forth in the Agreement and for no other purpose, and will not be used by me in any business affairs of my employer or of my own or be imparted by me to any other person.


_____

Signature


_____

Date

26

## Exhibit B

### Claims Team

The Claims Team will consist of Rick Swanson and a number of additional individuals that Reorganized WEC will identify to Wind Down Co within five days of the date of this Agreement.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER