IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>WESTINGHOUSE ELECTRIC COMPANY, LLC, *et al.*,<br><br>              Debtor.<br>------------------------------------------------------------<br>FLUOR ENTERPRISES, INC.,<br><br>              Plaintiff,<br><br>   -against-<br><br>W WIND DOWN CO., LLC,<br><br>              Defendant. | Chapter 11<br><br>Case No. 17-10751 (MEW)<br>(Jointly Administered)<br><br><br><br><br>Adv. Proc. 18-01635 (MEW) |

**DECLARATION OF JOHN DAVID MURA, JR. IN OPPOSITION TO FLUOR ENTERPRISES, INC.'S MOTION TO COMPEL WESTINGHOUSE ELECTRIC COMPANY, LLC TO PRODUCE DOCUMENTS IN RESPONSE TO THE SUBPOENA AND IN SUPPORT OF WESTINGHOUSE'S <u>CROSS-MOTION TO QUASH OR MODIFY THE SUBPOENA</u>**

John David Mura, Jr. declares pursuant to 28 U.S.C. §1746 as follows:

1.  I am employed by Westinghouse Electric Company, LLC ("Westinghouse") as an attorney for Westinghouse with the title "Senior Counsel". Based on my position as such, I have personal knowledge of the facts stated herein.

2.  I submit this Declaration in opposition to Fluor Enterprises, Inc.'s ("Fluor") motion ("Motion") to compel Westinghouse to produce documents in response to Fluor's subpoena ("Subpoena") and in support of Westinghouse's cross-motion to quash or modify the Subpoena.

1

3. This adversary proceeding concerns certain contractual agreements entered into between Fluor and the Debtor. Reorganized Westinghouse, as a third party, has no direct interest in the outcome of the adversary proceeding.

4. Prior to March 2019, Westinghouse produced to counsel for W Wind Down Co., LLC ("Wind Down") documents related to the Fluor negotiations and drafting of the contractual agreements between Fluor and the Debtor that occurred in 2015.

5. In March 2019, upon Fluor's request, I engaged in discussions with counsel for Fluor regarding potential discovery requests from Fluor to Westinghouse in connection with Fluor's adversary proceeding against Wind Down.

6. Counsel for Fluor indicated that as part of its discovery requests, Fluor may seek email communications between in-house lawyers for the Debtor (in particular, Colleen Grygier[1]) and their client regarding the negotiations and drafting of the contractual agreements between Fluor and the Debtor that occurred in 2015.

7. I informed counsel for Fluor that Westinghouse considers those communications to be subject to the attorney-client privilege.

8. On April 1, 2019, Westinghouse received the Subpoena from Fluor seeking documents, including the privileged communications. The Subpoena also seeks broad categories of documents. The Subpoena includes sixteen general requests with a number of requests containing numerous sub-parts. A copy of the Subpoena is attached hereto as Exhibit 1.

9. Further, the Subpoena covers a period of over three years (2015-2018), notwithstanding the fact that Fluor and the Debtor's negotiations primarily took place in November and December of 2015.

---

[1] Ms. Grygier is no longer employed by Westinghouse and currently works in Seattle, Washington.

2

10. As evidenced by the Motion, Fluor is refusing to cover any Westinghouse's costs associated with the Subpoena.

11. After receiving the Subpoena, I spoke with Cynthia Robertson, counsel for Fluor. I informed Ms. Robertson that Westinghouse objects to the Subpoena on numerous grounds, but that Westinghouse was willing to work with Fluor on defining the reasonable search parameters and categories of documents for potential production.

12. I asked Ms. Robertson to identify what documents Fluor is specifically looking for. Ms. Robertson identified internal emails of a single custodian, David Durham, between the dates of November 1, 2015 and December 31, 2015, relating to the negotiation of the Fluor agreements with the Debtor. I informed Ms. Robertson that Westinghouse would not collect, process and produce emails between Mr. Durham and Fluor, as Fluor already possessed those communications, nor would it produce emails between Mr. Durham and the Debtor's lawyers, as those are privileged.

13. On April 12, 2019, Westinghouse sent formal objections to the subpoena to Fluor (see Exhibit 2) and documented the discussion about the forthcoming production of Mr. Durham's emails. I also re-iterated that Westinghouse is willing to conduct reasonable searches in order to provide Fluor with documents that it cannot obtain from other searches. See Exhibit 2 ("I believe we can continue a dialogue towards the goal of providing the information Fluor needs, that it doesn't already have or cannot readily obtain elsewhere, without creating an undue or disproportionate burden to Westinghouse.")

14. On April 30, 2019, I attended the deposition of Ms. Grygier in Seattle, Washington. At the deposition, I hand delivered the Durham emails production (which consisted of 64 documents) to counsel for Fluor. During the deposition, counsel for Fluor did not ask Ms. Grygier

3

a single question bearing on the issue of whether her emails with the Debtor's personnel regarding her work on the Fluor subcontract negotiations and drafting were subject to the attorney-client privilege.

15. On May 17, 2019, counsel for Fluor wrote to Westinghouse, asserting that Westinghouse had not met its burden to prove that the emails between Westinghouse attorneys and its client were privileged, and that Fluor would continue to pursue the matter. See Exhibit 3.

16. On May 21, 2019, I responded to the letter re-iterating Westinghouse's assertion of privilege because the requested communications were "made for the purpose of obtaining legal advice and directed to an attorney who has been consulted for that purpose." See Exhibit 4 ("Fluor is seeking direct email communications between Westinghouse and its attorneys in which those individuals were specifically discussing the negotiation, drafting and interpretation of contract language for the Fluor subcontracts. As those are the very definition of privileged documents, I asked if Fluor has any facts to support an argument that Ms. Grygier's ([the Debtor's] lawyer) communications with her client regarding the negotiation of the Fluor subcontracts are not privileged.")

17. Colleen Grygier was the attorney assigned to provide legal services and legal advice to Westinghouse for this specific negotiation, and that was the only reason she communicated with these particular employees with respect to Fluor.

18. I also discussed with counsel for Fluor that Westinghouse had located a group of emails for Colleen Grygier and Howard Affinito (Deputy General Counsel for Westinghouse) from December 2015 that had previously been collected for another unrelated request. See *id.* I informed counsel that Westinghouse would create a log of the Fluor-related emails from this group and produce the log. See *id.*

4

19. On May 24, 2019, Westinghouse produced the log of 129 email communications to Fluor, which represented all of the internal Fluor-related emails in the data set for Affinito and Grygier.

20. On June 19, 2019, Fluor wrote to Westinghouse, continuing to seek the subject communications, asking for production of notes that Mr. Durham described in his deposition, and finally identifying additional custodians for document production. See Exhibit 5.

21. On June 24, 2019, Westinghouse responded, agreeing to locate and produce the Durham notes and agreeing to discuss search parameters for the additional custodians. See Exhibit 6.

22. On June 28, 2019, Westinghouse produced the Durham notes.

23. On July 2, 2019, in an attempt to resolve the issue and allow the parties to the adversary proceeding to engage in meaningful settlement discussions, Westinghouse agreed to produce 129 privileged emails from December 2015. This production was done without any subject-matter waiver and subject to Westinghouse reserving all its rights, including rights to assert privilege over other communications.

24. On July 11, 2019, I spoke with Ms. Robertson and the next day she forwarded a detailed description of the additional custodians and date ranges for additional email productions sought by Fluor. Among the custodians, Fluor requested Westinghouse to collect and produce the emails of three Westinghouse lawyers - Mike Sweeney (General Counsel), Howard Affinito and Colleen Grygier for more than a two year period (Fall of 2015 through January 1, 2018). See Exhibit 7.

25. On July 16, 2019, Westinghouse responded, objecting to the request to produce emails of the lawyer custodians, but agreeing to produce non-privileged emails of the **seven** other

5

custodians that were available from other unrelated productions. See Exhibit 7. Conducting searches of the emails of these seven custodians will be sufficient to return all relevant and responsive communications that concern the Fluor-Debtor agreements at issue, including non-privileged communications with in-house attorneys (and those of which are privileged, will be noted on Westinghouse's privilege log).

26. On July 30, 2019 I also confirmed to Fluor's counsel that Westinghouse will be able to prepare a privilege log. See Exhibit 8. I also asked Ms. Robertson if she still intended to send the suggested search terms to us as she had stated during the previous discussion. *Id.*

27. More than a week later, on August 7, 2019, Ms. Robertson responded that she is "still working on terms for the post-2015 time frame, since they're more difficult to pin down." See Exhibit 8. In the same email, Ms. Robertson sent a list of proposed search terms for the 2015 period. See *id*.

28. Westinghouse ran the proposed search terms and on August 14, 2019, informed Ms. Robertson that the search terms are too broad because more than half of the total emails for the relevant time period contain at least one of the proposed search terms. See Exhibit 8. More specifically, Westinghouse informed Ms. Robertson that, of 84,588 total emails, Fluor's search terms hit on 45,690 documents. I further provided an example that "a term like 'CBI' will pull in virtually any email to or from a CBI employee or discussing any project issue relating to CBI's work. Clearly such emails have no relation to the negotiation of the Fluor subcontract termination and fee provisions." See *id.* I further proposed narrowing the search to contain certain search terms, "which seem more than adequate to capture communications regarding the Fluor negotiations." *Id.*

29. The narrower search terms that Westinghouse suggested to Ms. Robertson were:

6

      i. Fluor OR "@fluor.com"

      ii. (terminat* OR exception OR guarantee* OR penalty OR control) w/10 fee

      iii. "t for c" OR "termination for convenience"

      iv. Dunning OR Tye OR Lackey OR Dempsey OR Biggs OR Porter OR Flowers OR McSorley

30. To date, I have not received any response from Fluor's counsel.

31. The broad and unreasonable search that Fluor insists on will significantly drive up the costs of a privilege review and log, which Fluor is refusing to cover.

32. Having received no response from Fluor for over three weeks, Westinghouse has since proceeded to process the emails based on the search terms that it proposed, and will produce the non-privileged documents, as well as a log of the privileged documents, as soon as practicable.

33. Fluor – who refuses to pay any of the costs associated with its overbroad and unreasonable Subpoena, and who did not send any proposed search terms to Westinghouse until August 7, 2019 despite being requested to do so as early as June – is forcing Westinghouse to expend more time and fees in defending its baseless Motion, which is premature at best.

34. For the reasons set forth herein and in Westinghouse's opposition to Fluor's Motion, Westinghouse respectfully requests that this Court deny the Motion in its entirety and grant Westinghouse's cross-motion to quash or modify the Subpoena.

Dated: 9/4/19

_____
JOHN DAVID MURA, JR., ESQ.

7